MEMORANDUM *
The ALJ’s determination that McCawley could “stand/walk no more than 2 hours” and “sit about 6 hours” in an 8-hour workday was not supported by substantial evidence. Although Dr. Forney’s two medical source statements could have supported the ALJ’s determination, it is unclear whether the ALJ treated Dr. Forney’s assessments of McCawley’s sitting and standing abilities as separate medical opinions and relied on the higher estimates of each. This would be a permissible approach under SSR 96-5p, because the stand/walk and sit assessments could be considered “separate medical opinions regarding diverse physical ... functions.” SSR 96-5p. The ALJ, however, did not state that he was following this approach or point to any other evidence in the record supporting his conclusion. Cf. Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999). Because a claimant’s residual functional capacity (RFC) “may be the most critical finding contributing to the final ... decision about disability,” SSR 96-5p, we remand to the agency to clarify the basis for the ALJ’s RFC determination.
The remainder of McCawley’s arguments lack merit. The ALJ gave “specific and legitimate” reasons for discounting Dr. Chandler’s opinion that McCawley could stand and walk only 45 minutes to 1 hour in an 8-hour workday. See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir.2007). Among other reasons, the ALJ noted the inconsistency between Dr. Chandler’s statement that McCawley’s fracture was “currently in the process of healing” and his own treatment records. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.2005). The ALJ also gave “specific and legitimate” reasons for partially discounting Dr. Forney’s opinion about McCawley’s functional limitations. See Orn, 495 F.3d at 632. For example, the ALJ noted that Dr. Forney was opining outside her area of specialization, see Holohan v. Massanari, 246 F.3d 1195, 1202 n. 2 (9th Cir.2001) (citing 20 C.F.R. § 404.1527(d)(5)), and that her statement that McCawley’s fracture was “displaced” was inconsistent with the medical evidence, see Bayliss, 427 F.3d at 1216.
The ALJ also gave “clear and convincing” reasons for discounting certain portions of McCawley’s symptom testimony. See Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir.1996). The ALJ discounted McCawley’s testimony regarding her “catching” problem because it was unsupported by objective medical evidence. See id. at 1281-82. The ALJ’s conclusion that the “locking” problem described by Dr. Forney was not equivalent to the “catching” problem described by McCaw-ley was a reasonable resolution of an ambiguity in the record. See Johnson v. Shala-la, 60 F.3d 1428, 1434 (9th Cir.1995). The ALJ partially discounted McCawley’s testimony regarding her bipolar disorder because (among other reasons) McCawley’s reported symptoms were inconsistent with her work history and statements to treating psychiatrists. See Smolen, 80 F.3d at 1284-85. The ALJ also discounted McCawley’s excess pain testimony because *690 she failed to complain to her treating physicians of extreme pain or seek treatment for such pain. See Chavez v. Dep’t of Health & Human Servs., 103 F.3d 849, 853 (9th Cir.1996) (noting that claims of excess pain “properly may be refuted by evidence of claimant’s behavior, such as ... [the claimant’s failure to] search for medical attention” for the alleged pain); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989) (stating that “an unexplained, or inadequately explained, failure to seek treatment” is the type of finding that can be “sufficient to discredit an allegation of disabling excess pain”). This conclusion is supported by the record, which shows that McCawley visited Dr. Forney a number of times during the relevant time period to receive treatment for hypothyroidism but did not complain of extreme pain or request pain medication. Nor does McCawley claim she refrained from requesting pain medication because it was too expensive. The ALJ similarly discredited McCawley’s claims of serious side effects from her medications because she failed to complain to her treating psychiatrists of such side effects. Finally, taken in context, the ALJ’s statement that “[i]t appeared that the claimant’s allegations of disabling pain are overstated due to her wish to get benefits” was not an improper consideration of MeCawley’s ability to pay for treatment in assessing her credibility, which is precluded by Gamble v. Chater, 68 F.3d 319, 321 (9th Cir.1995).
Except for the ALJ’s assessment of McCawley’s ability to stand/walk and sit, as discussed above, the ALJ’s assessment of McCawley’s RFC was supported by substantial evidence. The ALJ gave adequate consideration to the effects of obesity and fatigue due to hypothyroidism. Because the ALJ gave clear and convincing reasons for discrediting McCawley’s testimony about excess pain and medication side effects, he did not need to consider those symptoms in assessing her RFC. See Bayliss, 427 F.3d at 1217. Finally, the ALJ’s decision not to include mental limitations in McCawley’s RFC was supported by Dr. Bach’s expert opinion, the fact that none of McCawley’s treating psychiatrists had “impose[d] restrictions upon her mental ability to work,” and Dr. Finsaas’s opinion that McCawley’s limitations were mainly physical.[1]
AFFIRMED IN PART, VACATED IN PART, AND REMANDED.[2]

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. To the extent the ALJ erred at step 2 in concluding that McCawley’s bipolar disorder was not "severe,” that error was harmless because the ALJ considered the potential effects of bipolar disorder in determining McCawley’s RFC. See Burch v. Barnhart, 400 F.3d 676, 681-83 (9th Cir.2005).

. Each party shall bear its own costs on appeal.